R. Blake Hamilton (11395)
blake.hamilton@dentons.com
**DENTONS DURHAM JONES PINEGAR P.C.**
111 South Main Street
Suite 2400
Salt Lake City, UT  84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500

ATTORNEY FOR DEFENDANT

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD SCOTT NEMROW,<br><br>    Defendant. | **NEMROW'S OPPOSITION TO UNITED STATES' POSITION REGARDING DETENTION**<br><br>Civil No. 2:22-cr-481 CW<br><br>Judge Clark Waddoups<br>Chief Magistrate Judge Dustin Pead |

Defendant Richard Scott Nemrow hereby submits this Opposition to the Government's Position Regarding Detention and requests that he be released with conditions pending trial in this matter. The Government has not met its burden of demonstrating a serious risk of flight or obstruction by Mr. Nemrow and therefore Mr. Nemrow should be released. The Government must prove by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or by a

preponderance of evidence that no condition or combination of conditions will reasonably assure the defendant's appearance as required." 18 U.S.C. § 3142(c)(1)(B).

Mr. Nemrow's Pretrial Services Report ("PSR") states that no presumption of detention applies. Mr. Nemrow has not been charged with any offenses listed under 18 U.S.C. § 3142(e)(3), his charges are not violent, he has no criminal history, and he does not pose a risk of danger to the community. *See* PSR, at 4-5. Mr. Nemrow has strong ties to the community, including his wife and their 2 month old baby. Mr. Nemrow also is the sole provider of income to his former wife and their four children who live in Washington. In 2018 Mr. Nemrow worked with the Government regarding an FTC investigation which ultimately culminated in a stipulated permanent injunction. Mr. Nemrow was involved and defended his interests in that investigation and plans to do so in this case. Mr. Nemrow never failed to appear or defend in that case, and while he may have failed to appear in response to certain traffic tickets, he always endeavored to resolve them promptly to the best of his ability.

As the Government has indicated, this case involves voluminous discovery and multiple defendants, and will likely require significant time to bring to the trial stage. Mr. Nemrow should not be incarcerated during that time. His PSR report shows that he has the capacity and incentive to comply with any protections the Court deems appropriate to ensure his attendance to court and managing any risk.

## FACTS

1.  Mr. Nemrow was born in California but has lived in Utah for practically all of his life. He and his wife have a stable residence in Lindon, Utah.

2. Mr. Nemrow and his wife have a 2-month old baby. They live together with her children from a previous marriage. Mr. Nemrow has four older children who live in Washington with his former wife. Mr. Nemrow has a good relationship with his former wife and he is the sole provider of income to her household.

3. Mr. Nemrow's parents, two of his siblings, and his wife's family reside in Utah. He is close to his family and visits with them often.

4. Mr. Nemrow has no prior criminal history. PSR at 4.

5. Mr. Nemrow has battled with depression and anxiety for a significant period of his life. He is currently taking medications and treatment for these issues. He was hospitalized within the last two years for issues involving his mental health, although he has not attempted suicide.

6. In August 2021, Mr. Nemrow sought treatment concerning abuse of prescription pain killers. He successfully completed treatment in May 2022. Since that time he has not been working but he had some savings so he chose stay home to spend that time with his wife, her children, and their new baby.

7. Mr. Nemrow's extended family support is very strong. Mr. Nemrow's father, Norman R. Nemrow, is exceptionally close with Mr. Nemrow and has been familiar with Mr. Nemrow's business dealings and finances. *See* Letter from Norman R. Nemrow, attached hereto as **Exhibit A**. He spent approximately a month shadowing Mr. Nemrow in his business dealings to act as a support system given Mr. Nemrow's mental health challenges. *Id*. Mr. Nemrow's father never saw anything questionable during that time. *Id*.

8. Upon release Mr. Nemrow intends to seek employment. *Id*. at 3.

9. The PSR gives Mr. Nemrow a PTRA Risk Score of 6 due solely to his history of failing to appear for certain traffic citations. *Id*. at 5. This score predicts that there is a 3% he will fail to appear. *Id.*

## LEGAL STANDARD

Defendants should only be detained pending trial if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safty of any other person and the community. . . ." 18 U.S.C. § 3142(e). If conditions are warranted, the Court must use "the least restrictive further condition, or combination of conditions [that] reasonably assure[s] the appearance of the person as required." 18 U.S.C. 2142(c)(1)(B). The burden falls to the Government to prove that no conditions of release could reasonably protect the community. *Id*. The Bail Reform Act includes the following factors the Court must take into account in addition to the safety of the community: (1) the nature of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, past conduct, etc.; and (f) the nature and seriousness of the danger to any person or the community that would be posed by the person's release; or other compelling reasons. 18 U.S.C. § 3142(g) & (i).

## ARGUMENT

I. **MR. NEMROW SHOULD BE RELEASED WITH CONDITIONS TO ENSURE HIS APPEARANCE AND SAFETY TO THE COMMUNITY.**

    A. **Mr. Nemrow has no criminal history, strong family support, and strong ties to Utah.**

As shown in the PSR report, Mr. Nemrow has significant ties to the community including his wife and 2-month old daughter. PSR at 2-3. He has strong family support including his

4

parents and siblings, as well as his wife's family in Utah. *See* Family & Friend Letters, attached hereto as **Exhibit A**. Between 2014 and 2018, Mr. Nemrow actively defended himself against allegations in an FTC action, which is demonstrated by the over 400 entries on that docket. Ultimately, in 2018 he stipulated to a permanent injunction in that case. As he did in the previous case, Mr. Nemrow intends to fully defend himself in this action, as opposed to fleeing. Upon release, Mr. Nemrow intends to seek employment so that he can continue to provide for his wife, his former wife, and all of his children while he defends himself in this action. PSR at 3.

Mr. Nemrow does have family in other states but he has not shown any risk that he would leave the state if ordered not to do so. Mr. Nemrow does not have ties out of the country. The Government has claimed that Mr. Nemrow has a personal bank account in Russia based upon some alleged text messages. Government's Position, at 8. However, the Government omits the fact that these texts were merely a conversation in which Mr. Nemrow was consulting about a potential bank account for the company he was consulting. *Id.* This is evidenced by the text message itself which references a website and URLs for the company. *Id*. The other text messages also show that Mr. Nemrow's priority was and always has been to protecting and providing for his family, which shows that he will not leave them to flee these charges. *Id.* at 9.

B.   **Mr. Nemrow does not pose a significant danger to the community.**

Mr. Nemrow has no criminal history, but he admits to battling substance abuse in the past. PSR at 4. He has voluntarily sought treatment for his addiction, including successfully completing an 18-month program earlier this year. *Id*. Mr. Nemrow has worked hard over the years to build the skills and resources he needs to ensure that he can successfully live with his addiction and stay sober. Mr. Nemrow has also suffered from issues with his mental health. He

5

takes prescription medications and sees a physician to help him with his mental health. PSR at 3. Again, Mr. Nemrow has worked to get the treatment he needs and use the tools he has available to treat his depression and anxiety. *Id*. While the Government may focus on these aspects of Mr. Nemrow's life as a reason to keep him in custody, Mr. Nemrow's history has shown that he is capable of managing his addiction and mental health problems, that he is familiar with seeking help if he needs it, and that he will be consistent with any conditions related to substance abuse or treatment if ordered to do so.

### C. Mr. Nemrow has mental health conditions that require ongoing medication and treatment.

Mr. Nemrow has mental health conditions which require prescription medication and treatment which the jail may not provide. The PSR notes that the current situation is having an effect on Mr. Nemrow's mental health. PSR at 3. Mr. Nemrow needs consistent access to his prescriptions and his physician to ensure that his mental health conditions are kept in check and do not escalate. Mr. Nemrow has been hospitalized in the past in situations where his mental health was not effectively managed, and so ensuring consistent treatment in his situation is best. Pretrial release would allow Mr. Nemrow access to the medications and professional treatment he needs to maintain his condition.

### D. Mr. Nemrow is dedicated to providing for his wife, former wife, and children.

Mr. Nemrow is the sole provider for his current wife, their child, and his step-children, and his former wife and their four children. Mr. Nemrow provides more than the court-ordered support to his former wife which has allowed her the opportunity to not have to work but instead be a full-time parent to their children. Their children are thriving due to this support. Mr.

Nemrow's history shows his dedication to supporting the people in his life who rely upon him. Although he had chosen not to work for a period after he completed his addiction treatment earlier this year, Mr. Nemrow intends to seek full-time employment upon his release so that he can continue providing for his family.

### E. The Government's allegations of permanent injunction violations are unproven.

The Government claims that the weight of the evidence supports detention of Mr. Nemrow while his case is pending. However, aside from general references to the still unproven allegations in the indictment, the only evidence the Government provides in support of detention are (1) an email from Kevin Miller which purports to contain the content of some unspecified text messages with Mr. Nemrow, (2) two screen shots of text messages between unknown senders. This evidence is far from weighty. It is the Government's burden to show that detention is required, and this evidence falls woefully short of that obligation. At most these communications amount to mere conjecture, they show absolutely no criminal activity and are likely not even admissible. The Government cannot rely on such flimsy evidence as grounds to claim that the weight of the evidence requires that the Court detain Mr. Nemrow.

### F. The Government has failed to show a flight risk due to Mr. Nemrow's alleged bank accounts.

It is not uncommon for businesses with large amounts of assets to have various bank accounts. The Government claims that Mr. Nemrow opened offshore bank accounts in the past, but again only cites to a text message referencing a potential company bank account with a Russian bank. They have provided no evidence of any personal offshore bank accounts, in fact the evidence before the Court, specifically the letter from Norm Nemrow, indicates that Mr.

Nemrow's assets are all located in the United States. *See* Norman Nemrow's Letter, **Exhibit A**. Regardless of whether or not Mr. Nemrow has offshore bank accounts or even has access to any, this fact without more does not make Mr. Nemrow a flight risk. Furthermore, if the Government has genuine concerns that Mr. Nemrow would leave his wife and children and flee to Russia (which his history demonstrates would be totally against his character), there are conditions of release available that could eliminate that risk.

  G. **The nature of the offense with which Mr. Nemrow is charged does not require detention.**

  Mr. Nemrow has been charged with varying counts of wire fraud, bank fraud, money laundering, and identity theft under 18 U.S.C. §§ 1349, 1956(h), 1343, 1028A, and 1957. None of these charges are violent crimes, and they do not create a presumption of detention. While the Government's position states that the nature of the offense requires detention, aside from pointing to the allegations in the indictment, which have yet to be proven, the Government has not identified what in particular about the alleged crimes makes Mr. Nemrow present a risk such that detention is required for him as opposed to other individuals charged with the same crimes and with allegations of the same conduct. In short, the Government has identified nothing unique about the nature of the alleged crimes that requires detention, especially considering that the minimal risks that the Government identifies can all be addressed with reasonable conditions for release.

**II. MR. NEMROW'S RELEASE IS REQUIRED TO ENSURE ADEQUATE DEFENSE.**

  The allegations against Mr. Nemrow are complex. His defense will require considerable effort and coordination between counsel and defendant. This will include the review of

voluminous documents and data by counsel with the assistance of Mr. Nemrow. Courts may order temporary release of a person in custody where release is "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Due to the size and complexity of the case and evidence involved, keeping Mr. Nemrow in custody will greatly hinder his ability to effectively participate in his defense. The Court should release Mr. Nemrow so that he may fully participate in his own defense.

## CONCLUSION

For these reasons, the Court should permit Mr. Nemrow to be released with appropriate conditions.

DATED this 18th day of December, 2022.

        **DENTONS DURHAM JONES PINEGAR P.C.**

        /s/ R. Blake Hamilton
        R. Blake Hamilton
        ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that I served a copy of **NEMROW'S OPPOSITION TO THE UNITED STATES' POSITION REGARDING DETENTION** was served this 18th of December, 2022, via court filing upon the following people.

Trina Higgins
Jamie Thomas
Jennifer Muyskens
Cy Castle
Office of United States Attorney
111 S. Main Street, Suite 1800
Salt Lake City, UT 84111

/s/ Melani Thatcher
Paralegal